**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KEITH ALAN ROBERTS,** | : | |
| **Plaintiff** | : | **No. 3:15-cv-01607** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **DEBBORAH WILSON, et al.,** | : | **(Magistrate Judge Arbuckle)** |
| **Defendants** | : | |

## MEMORANDUM

This matter is before the Court on the Report and Recommendation of Magistrate Judge Arbuckle (Doc. No. 93), recommending that the Court deny a motion for summary judgment filed by Dr. Deborah Wilson, Registered Nurse Patty Bunting, Health Care Administrator Jackie Gregory, and other medical personnel (the "Medical Defendants") (Doc. No. 84), to which the Medical Defendants have filed objections (Doc. No. 94). Upon consideration of the briefing filed in connection with the Medical Defendants' motion for summary judgment, Magistrate Judge Arbuckle's Report and Recommendation, the Medical Defendants' objections, and the applicable law, for the reasons provided herein, the Court will adopt the recommendation set forth in the Report and Recommendation, and will deny the Medical Defendants' motion for summary judgment, but for reasons different than those offered by Magistrate Judge Arbuckle.

## I.     BACKGROUND[1]

August 14, 2015, Plaintiff Keith Alan Roberts initiated this pro se civil rights action pursuant to 42 U.S.C. § 1983, claiming that members of Pike County Correctional Facility ("PCCF")'s medical staff and PCCF's contracted medical provider, PrimeCare Medical, Inc.

---

[1] The Court adopts and incorporates by reference the undisputed material facts identified by Magistrate Judge Arbuckle in the Report and Recommendation as if fully set forth herein. In addressing the Medical Defendants' objections to the Report and Recommendation, the Court limits its discussion to only those material facts established by the evidence that are relevant for purposes of resolving the objections.

("PrimeCare"), exhibited deliberate indifference to Plaintiff's serious medical needs by denying

him recommended treatment for his diagnosed Hepatitis C condition in violation of the Eighth

Amendment.  Following service of the complaint, Defendants filed a motion to dismiss pursuant

to Federal Rule of Civil Procedure 12(b)(6). On December 16, 2015, Magistrate Judge Carlson

entered a Report and Recommendation, wherein he recommended that the Court grant in part

and deny in part Defendants' motion to dismiss.  (Doc. No. 30.)  Specifically, Magistrate Judge

Carlson recommended that the Court dismiss PrimeCare from the action due to Plaintiff's failure

to state a claim under Monell v. Department of Social Services, 436 U.S. 658 (1978) and its

progeny (Doc. No. 30 at 18-21), but permit Plaintiff's Eighth Amendment deliberate indifference

claim to proceed against the Medical Defendants.  Magistrate Judge Carlson noted that while

Plaintiff "barely . . . pleaded sufficient facts to allow his Eighth Amendment claims to proceed

forward against the individual [D]efendants" (Id. at 20), an "assessment of the nature, extent and

quality of" the care received by Plaintiff at this juncture in proceedings "would entail

consideration of the facts beyond the pleadings, something which can only be done in a properly

documented motion for summary judgment."  (Id. at 18.)  On June 7, 2016, the Court adopted the

Report and Recommendation of Magistrate Judge Carlson.  (Doc. No. 57.)

At the conclusion of the discovery period, the Medical Defendants filed a motion for

summary judgment under Federal Rule of Civil Procedure 56 (Doc. 84), together with a

supporting brief (Doc. No. 85), a statement of material facts (Doc. No. 87), and an appendix of

exhibits (Doc. No.).  On February 10, 2017, Plaintiff filed a three-page, handwritten brief in

opposition to the Medical Defendants' motion for summary judgment along with seventy-one

pages of record evidence.  (Doc. No. 84).  On September 27, 2017, Magistrate Judge Arbuckle

issued a Report and Recommendation recommending that the Medical Defendants' motion for

summary judgment be denied.  (Doc. No. 93.)  The Medical Defendants filed objections to the Report and Recommendation on October 6, 2017.  (Doc. No. 94.)

## II.    LEGAL STANDARDS

### A.    STANDARD OF REVIEW OF A MAGISTRATE JUDGE'S REPORT & RECOMMENDATION

The Magistrate Act, 28 U.S.C. § 636 et seq., and Rule 72(b) of the Federal Rules of Civil Procedure provide that any party may file written objections to a magistrate's proposed findings and recommendations.  The written objections must "specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections."  L.R. 72.3. When a party objects to a report and recommendation of a magistrate judge, this Court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b); M.D. Pa. L.R. 72.3.  The Court may also "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  Id.

### B.    LEGAL STANDARD ON MOTION FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).  A factual dispute is material if it might affect the outcome of the suit under the applicable law, and is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party.  Id. at 248-49.  Thus,

where no material fact is in dispute, the moving party need only establish that it is entitled to judgment as a matter of law.  Id. at 248.  Conversely, where there is a dispute as to an issue of material fact, the moving party must establish that the factual dispute is not a genuine one.  Id.

The party moving for summary judgment bears an initial burden of identifying evidence that it believes demonstrates the absence of a genuine issue of material fact.  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004).  Once the moving party has carried this initial burden, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (internal quotation marks omitted).  If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is warranted.  Celotex, 477 U.S. at 322.  With respect to the sufficiency of the evidence that the non-moving party must provide, a court should grant summary judgment where the non-movant's evidence is merely colorable, conclusory, or speculative.  Anderson, 477 U.S. at 249-50.  There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts.  Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

C.    EIGHTH AMENDMENT DELIBERATE INDIFFERENCE STANDARD

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain," which includes "deliberate indifference to serious medical needs of prisoners."  Estelle v. Gamble, 429 U.S. 97, 103-04 (1976)).  To prevail on a claim of deliberate indifference, Plaintiff must establish that the Medical Defendants exhibited deliberate indifference to his serious medical need.  This standard is two-fold, requiring Plaintiff to make an "objective" showing that the deprivation was

sufficiently serious, and a "subjective" showing that the Medical Defendants acted with a "sufficiently culpable state of mind." Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)); see West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978) ("This standard is two-pronged. It requires deliberate indifference on the part of prison officials and it requires the prisoner's medical needs to be serious."). "[T]o establish a violation of [an inmate's] constitutional right to adequate medical care, evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003).

With respect to the first prong of the Estelle standard, a serious medical need exists if failure to treat such condition would constitute a "denial of the minimal civilized measure of life's necessities." Farmer v. Brennan, 511 U.S. 825, 825 (1994). To satisfy the deliberate indifference prong of the Estelle standard, the Plaintiff must prove that the Medical Defendants knew of and disregarded an excessive risk to his health or safety. Id. (citation omitted). Deliberate indifference has been found "in a variety of circumstances, including where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (citations omitted). In this context, prison medical authorities are afforded considerable latitude in the diagnosis and treatment of inmates. Inmates of Allegheny Cty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979). Thus, "[m]ere medical malpractice, negligence, and courses of treatment inconsistent with the desires of the prisoner . . . do not

constitute deliberate indifference to serious medical needs." Lopez v. Corr. Med. Servs., Inc., 499 F. App'x 142, 146 (3d Cir. 2012).

## III. DISCUSSION

In his Report and Recommendation, Magistrate Judge Arbuckle recommends that the Court deny the Medical Defendants' motion for summary judgment due to the lack of record evidence addressing the "issue of why [Plaintiff] was denied anti-viral treatment." (Doc. No. 93 at 16.) Magistrate Judge Arbuckle finds that the Medical Defendants failed "to meet their initial burden of demonstrating that there is no genuine issue as to any material fact," and reasons that "[b]ecause Defendants provided no evidence to address why [Plaintiff] was denied anti-viral treatment, [he] cannot determine whether this denial was based on the Medical Defendants' professional judgment or whether [Plaintiff] was denied treatment solely because he did not meet Pike County protocol for the treatment of Hepatitis C." (Id. at 15-16.) Indeed, relying on this deficiency in the record, Magistrate Judge Arbuckle rejects the arguments advanced in the Medical Defendants' motion for summary judgment that: (1) they complied with PCCF's medical protocol, which dictated that Plaintiff's condition was not one which would necessitate immediate medical attention; and (2) Plaintiff's claim boils down to a mere disagreement as to the proper medical treatment. Notably, Magistrate Judge Arbuckle disposes of the Medical Defendants' arguments in the following manner:

> First, Defendants suggest that"[p]ursuant to the medical department's policy and protocol, Plaintiff's condition was not deemed to be one which would initiate medical treatment," . . . and argue that treatment in compliance with a prison's medical protocol typically rebuts any claim of deliberate indifference. . . . Although Defendants are correct that, as a matter of law, Courts have found no evidence of deliberate indifference in cases where there was no dispute that an inmate was denied Hepatitis C treatment under prison medial protocols, in this case Defendants have failed to provide any evidence to support their allegation that [Plaintiff] did not meet prison treatment protocols. . . .

> Second, Defendants argue that [Plaintiffs'] claim boils down to an allegation that Defendants exercise of professional judgment amounts to deliberate indifference. . . . Defendants are correct that a mere disagreement between doctor and inmate-patient about the proper course of care—or even inadequate care resulting from an error in medical judgment—do not amount to deliberate indifference. However, in his [c]omplaint[,] [Plaintiff] specifically alleges that he was denied care under [PCCF] medical protocol, and that either the protocol itself or Defendants' application of the protocol amounts to deliberate indifference.

(Doc. No. 93 at 16-17.)

The Medical Defendants lodge a three-part challenge to Magistrate Judge Arbuckle's recommendation that the Court deny their summary judgment motion. First, the Medical Defendants respectfully submit that Magistrate Judge Arbuckle erred in his application of Federal Rule of Civil Procedure 56 to the evidence by "requiring that Defendants disprove Plaintiff's case." (Id. at 2-3.) Specifically, the Medical Defendants contend that Magistrate Judge Arbuckle placed the burden on them to disprove Plaintiff's Eighth Amendment deliberate indifference claim rather than requiring Plaintiff to point to evidence in the record that creates a genuine issue of material fact sufficient to defeat summary judgment. (Doc. No. 94 at 3.)

Second, the Medical Defendants object to Magistrate Judge Arbuckle's specific finding that the record is devoid of evidence substantiating the decision by the Medical Defendants to deny Plaintiff anti-viral treatment for his Hepatitis C condition as a proper exercise of the Medical Defendants' medical judgment. The Medical Defendants reiterate that it is incumbent on Plaintiff to proffer evidence demonstrating that the denial amounted to a substantial departure from accepted professional judgment, and that, in the absence of such a showing, the Medical Defendants are presumed to have exercised appropriate medical judgment.

Third, the Medical Defendants dispute that, notwithstanding the lack of authority in this Circuit imposing an additional burden on prison medical personnel to justify the standard of medical care rendered to an inmate on summary judgment where no evidence of deliberate

indifference otherwise exists in the record, the undisputed evidence of record proffered by the Medical Defendants actually demonstrates that the "decision to not immediately move forward with anti-viral treatment was based upon professional medical judgment." (Id. at 11.) Due to these asserted errors, the Medical Defendants urge the Court to reject the Report and Recommendation and grant their motion for summary judgment.

Having conducted a de novo review of those portions of the Report and Recommendation to which the Medical Defendants have specifically objected, the Court agrees with the Medical Defendants that the Magistrate Judge's proposed findings are grounded on a misapplication of the summary judgment standard to the factual record. Thus, the Court declines to adopt the Report and Recommendation insofar as it recommends that summary judgment be denied due to the Medical Defendants' failure to sustain their threshold burden of demonstrating the absence of a genuine issue of material fact as to Plaintiff's Eighth Amendment deliberate indifference claim. In the Court's view, the record is replete with evidence adduced by the Medical Defendants demonstrating that Plaintiff was afforded ongoing clinical evaluations, diagnostic testing, and monitoring throughout the relevant period. (Doc. No. 85-26.) As it relates specifically to Plaintiff's Hepatitis C condition, the record reflects that Plaintiff was assessed and counseled on several occasions by medical personnel and that Dr. Deborah Wilson, upon reviewing his pre-incarceration medical records and evaluating him when he presented at sick call, did not believe that Plaintiff's condition warranted initiation of Hepatitis C treatment at that time. For example, the Medical Defendants have produced Dr. Wilson's treatment note dated May 21, 2015, which provides, in relevant part:

> [R]eviewed with him he was not on meds when he came in for his [H]epatitis [C]. Reviewed with him that up until approximately two years ago protocol outside the prison required a person to have documented stage 11 cirrhosis before treatment would be initiated[,] [therefore], . . . his waiting until he was sentenced would not

cause concern [i]n view of the fact that he is unaware if he has cirrhosis. He is complaining that his viral load is in the millions however, a significant portion of hepatitis affected individuals are in the millions and still wait for additional criteria before initiating treatment in my experience working with MMTP and a hepatitis clinic inside the MMTP[2].

(Doc. No. 85-23 at 2.)  The Medical Defendants also submit a copy of the Level II Medical

Grievance Form submitted by Plaintiff on June 12, 2015, wherein he complains of the following:

It was stated by the doctor I don't meet protocol and that I would have to be incarcerated at least 2 yrs before receiving treatment. The second time she said I would have to be incarcerated 1 yr.  These are antiquated standards and are also illegal.  Modern medications call for a much shorter medicinal remedy in some cases as little as 8 weeks-12. I would have been through the whole regimen by now. I call for a modification in procedure so people in my position receive the medications they are entitled to[ ].  I will state again that I told the medical staff of my condition and gave access to all my records to show I was already preparing to receive the meds having had psychological clearance that my specialist (gastroent[er]ology) required.  Waiting months and months is not an option. The [ ]  doesn't get better and I have been experiencing weird sensations in my lumbar area.  I plead with the medical group to adjust their practice to a modern and just standard as I am distraught. I imagine if I had been put on the medication and to have it been successful how I would feel right now and I would not have to go through these regrettable formalities continuing not to know.

(Doc. No. 85-24 at 2.)  The grievance form contains Defendant Health Care Administrator Jackie

Gregory's handwritten response to Plaintiff's complaint, which states:

Spoke c̄ Pt. Regarding the Dr.'s decision as to why medication was not started. Also that the CRNP stated the same. Medical records were received from specialist he was treated by and reviewed by Dr. at this time. Dr. Wilson does not feel it is medically indicated for medication. Pt. still not agreeing . . . .  I will speak to . . . Bunting regarding this also.

(Id.)

A treatment note entered on July 9, 2015, indicates that Dr. Wilson examined Plaintiff

during a scheduled follow-up appointment following the Level II Medical Grievance he

submitted requesting treatment for his Hepatitis C diagnosis, reviewed his medical records with

---

[2] The acronym MMTP refers to the Methadone Maintenance Treatment Program.

Plaintiff during that appointment, particularly the laboratory testing he had done on December 14, 2014, which showed elevated ALT and AST levels with "AST worse th[a]n [ALT] indicating his alcohol use," and noted that Plaintiff had admitted that he was "using a significant amount of Tylenol" during that period as well, which might have been a contributing factor to the liver function test results. (Doc. Nos. 85-25 at 2; 85-26 at 2.) The evidentiary record also reveals that Dr. Wilson ordered a comprehensive metabolic panel and CBC for Plaintiff on October 15, 2015 in response to Plaintiff's continued complaints of increasing pain attendant to his Hepatitis C condition. (Doc. No. 85-28 at 2.)

Through this evidence, the Medical Defendants have shown that Plaintiff had continuous access to medical treatment from health care personnel and received periodic monitoring with respect to his Hepatitis C condition. The evidence further demonstrates that the decision to continue monitoring Plaintiff rather than engage in a more aggressive treatment regimen during that period was, at least in part, a function of Dr. Wilson's independent medical judgment. Accordingly, the Court is satisfied that the Medical Defendants have met their initial burden of specifying the basis for their motion and identifying the portion of the record that demonstrates the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 322 (holding that "the party moving for summary judgment may satisfy Rule 56" by demonstrating that "the nonmoving party's evidence is insufficient to establish an essential element of [its] claim").

Because the Medical Defendants have made a sufficient prima facie showing that they are entitled to summary judgment, the burden shifts to Plaintiff to demonstrate the existence of a genuine dispute of material fact.[3] See Fed. R. Civ. P. 56(a). Here, the Court has identified a

_____

[3] In his Report and Recommendation, Magistrate Judge Arbuckle notes that Plaintiff "filed a document docketed as a 'Brief in Opposition' that includes a three-page brief and approximately seventy-one (71) pages of evidence . . ." but does not include "any statement that is responsive to

number of exhibits Plaintiff submits in opposition to the Medical Defendants' motion for summary judgment, many of which are duplicates of exhibits appended to the Medical Defendants' motion for summary judgment. Included among those exhibits are Plaintiff's pre-incarceration laboratory results (Doc. No. 89 at 7-15); several inmate grievances, medical request forms, and letters addressed to PrimeCare and others requesting treatment for his Hepatitis C condition (id. at 17-27, 45-51); and the Medical Defendants' responses to Plaintiff's written interrogatories (id. at 29-43). Significantly, Plaintiff produces a copy of a letter from his gastroenterologist advising as follows:

> Keith Alan Roberts was a patient under my care from 05/28/14 up until his recent incarceration. Mr. Roberts was diagnosed with Hepatitis C and was about to start treatment for this. It is medically necessary for this patient to start treatment as

Defendants['] [s]tatement of [m]aterial [f]acts." (Doc. No. 93 at 10.) Consequently, Magistrate Judge Arbuckle deems all supported material facts set forth in the Medical Defendants' statement of material facts admitted under Local Rule 56.1 for purposes of his Report. Based upon the Medical Defendants' recitation of the unopposed material facts, Magistrate Judge Arbuckle nevertheless concludes that the Medical Defendants failed to make a prima facie showing that they are entitled to summary judgment.

The Court's review of Plaintiff's brief in opposition, however, reveals that Plaintiff did, in fact, respond to the Medical Defendants' statement of material facts, albeit not in the form of a separate document containing a counter-statement of material facts. Indeed, in Plaintiff's handwritten three-page brief, Plaintiff references Local Rule 56.1 and explicitly notes his opposition to "all argument[s] for summary judgment in part or full [due] to the material facts. See Exhibit A." (Doc. No. 89 at 1.) A district court may, in the exercise of its inherent discretion, "depart from the strictures of its own local procedural rules where (1) it has a sound rationale for doing so, and (2) so doing does not unfairly prejudice a party who has relied on the local rules to his detriment." United States v. Eleven Vehicles, 200 F.3d 203, 215 (3d Cir. 2000); see State Auto Prop. & Cas. Ins. Co. v. LaGrotta, 529 F. App'x 271, 273–74 (3d Cir. 2013) (finding no abuse of discretion in a district court's decision to permit a movant to proceed on raw exhibits without a separate statement of material facts where the relevant record consisted only of an insurance policy and underlying state action complaint, and the non-movant articulated no prejudice it suffered as a result of the movant's failure to file a separate statement of material facts). Here, due to Plaintiff's pro se status, and in light of the Court's finding that the Medical Defendants have satisfied their initial burden in connection with their motion for summary judgment, the Court considers the exhibits Plaintiff has offered in opposition to the Medical Defendant's motion for summary judgment in evaluating whether summary judgment is appropriate.

soon as possible. He should be under the care of a Gastroenterologist for this treatment.

(Doc. No. 89 at 53.)

When viewed in the light most favorable to Plaintiff, the evidence marshalled by Plaintiff, particularly the letter from his gastroenterologist detailing his opinion that it is medically necessary for Plaintiff to begin a therapeutic drug program as soon as possible, is sufficient to create a genuine issue of material fact as to whether the Medical Defendants acted with deliberate indifference. "While case law counsels that we defer to the medical judgments of physicians, an issue of material fact may exist where there is a clear reason in the record to question the basis for a medical determination." Cooleen v. Lamanna, 248 F. App'x 357, 361 (3d Cir. 2007) (citing Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993) ("While a reasonable trier of fact might believe [the doctor's] explanation that these evaluations were . . . medically desirable before beginning physical therapy, it might also reject this explanation.")). Indeed, Plaintiff's letter from his medical specialist, construed liberally as a proffer of expert testimony, certainly calls into question whether the delay in initiating treatment was motivated by non-medical factors.

Moreover, Dr. Wilson's treatment notation from May 21, 2015, describing that "up until approximately two years ago protocol outside the prison required a person to have documented stage 11 cirrhosis before treatment would be initiated[,] [ and therefore], . . . his waiting until he was sentenced would not cause concern [i]n view of the fact that he is unaware if he has cirrhosis," as well as Plaintiff's deposition transcript produced by the Medical Defendants in support of their motion for summary judgment, only bolster the Court's finding that there exists a genuine issue of material fact regarding whether the decision to delay treatment was non-medical

in nature. Indeed, Plaintiff's testified that Dr. Wilson informed him of the following when he inquired as to why he was not going to start the Hepatitis C treatment protocol:

> A. She was very vague. She was very vague. She told me different things. At first she said – she said that we don't treat for a year, and then she says, you don't meet protocol. I asked what protocol was. She said she didn't know what protocol was. And it goes on and on from there.

(Doc. No. 85-30 at p. 26:5-11.) Plaintiff also testified at his deposition that Registered Nurse Patty Bunting informed him that he would not qualify for treatment for one year, "and then she changed her story and said it will be two years. So after two years -- no, she said -- the first thing she said was, you have to be in this facility for two years before we start treatment." (Doc. No. 85-30 at p. 32:2-9); see Pearson v. Prison Health Serv., 850 F.3d 526, 537 (3d Cir. 2017) ("All that is needed is for the surrounding circumstances to be sufficient to permit a reasonable jury to find that the delay or denial was motivated by non-medical factors.") (citations omitted).

Accordingly, because the record raises a genuine issue of material fact as to whether the Medical Defendants' decision to withhold antiviral treatment for Plaintiff's Hepatitis C condition was driven by non-medical factors, the Court will adopt Magistrate Judge Arbuckle's Report and Recommendation on somewhat different grounds that that given by the Magistrate Judge, as described above, and will deny the Medical Defendants' motion for summary judgment without prejudice. Moreover, the Court will recommit this matter to Magistrate Judge Arbuckle for further pretrial proceedings, including consideration of whether appointment of counsel to represent Plaintiff in this action pursuant to 28 U.S.C. § 1915(e)(1) is warranted, which may necessitate the reopening of discovery.

## IV. CONCLUSION

Based upon the foregoing, the Court will adopt the Report and Recommendation of Magistrate Judge Arbuckle (Doc. No. 93), and deny without prejudice the Medical Defendants' motion for summary judgment (Doc. No. 84). An appropriate Order follows.